**STATE ex rel. B. G. Burg HUGHES, Plaintiff in Error,**

v.

**Clinton E. RIGGS, Walter Benton, Jack Estrada, A. Jackson Lawrence, City Auditor, and M. M. Shaver, City Treasurer, as Board of Trustees of the Police Pension and Retirement System of the City of Tulsa, Oklahoma, Defendants in Error.**

No. 37681.

Supreme Court of Oklahoma.

July 2, 1957.

**524**

Milton W. Hardy (of Hardy & Hardy), Tulsa, for plaintiff in error.

Darven L. Brown, City Atty., Luther P. Lane, Wilton W. Works, Charles E. Norman and William E. Franklin, Asst. City Attys., Tulsa, for defendants in error.

BLACKBIRD, Justice.

The question involved in this appeal is whether or not the Board of Trustees of the Police Pension and Retirement System of Tulsa, Oklahoma, may be required to order payment to a retired policeman eligible for retirement benefits, such benefits in an amount equal to $\frac{1}{2}$ or fifty percent, of his average monthly salary during the last preceding year of his active service. Plaintiff in error, herinafter referred to as relator, who is such a policeman and is receiving such benefits in a lesser amount, sought to raise this question by mandamus proceedings in the trial court to require the Board, whose members appear here as defendants in error, to order him paid such benefits in the aforesaid amount from the Tulsa Police Pension and Retirement Fund. After the trial, the trial court entered judgment denying relator a peremptory writ against the members of the board, hereinafter referred to as respondents; and he has lodged the present appeal from said judgment. In entering said judgment, the trial court concluded that:

> " * * * relator has an adequate remedy at law by proceedings before the Board of Trustees of the Police Pension and Retirement System * * *, and appeal therefrom if any adverse ruling be had * * *
>
> " *   *   *   *   *   * "

It is the relator's position that the trial court should have granted the writ, because, under the Tulsa City Ordinance and this State's Police Retirement and Pension Law, Tit. 11 O.S. 1951 § 541 et seq., which govern the matter, (1) the Board has no authority to order payment to him of less than the above described 50% average monthly salary, but has the mandatory duty of ordering that amount, if any, paid; and that (2) in a case like the present one, when a lesser amount is ordered paid, one entitled

to such benefits has no remedy except the extraordinary one of mandamus.

Relator's argument under the first of the above contentions is based on the use of the word "may" in certain provisions of sec. 541, of Title 11, supra, and in sec. 94 of the applicable city ordinance. He contends that said word in those provisions, as properly interpreted, means "must." The part of said section which must be considered is not confined to the provisions he cites, but is as follows:

"Every city or town, which has in its regular employ two (2) or more policemen and which has established a Board of Trustees as by this Act or amendments thereto provided, is hereby *authorized and empowered* to pay out of any funds, in its Pension and Retirement System, a service pension to any policemen eligible as hereinafter provided, in such amount as said city or town shall by ordinance provide, not exceeding in any event the amount of money in such funds and not *exceeding in any event one-half* (½) of the average final compensation of any such policemen, except as provided for herein. Such city or town establishing a pension system shall by ordinance fix a minimum age for retirement which shall not be less than fifty-five (55) years. In order for a policeman to be eligible for such service pension he must at least have reached the minimum age for retirement so provided for by such ordinance, except as provided for herein, his service with the Police Department of any such city or town must have ceased, he must have served for a period of twenty (20) years or more in some Police Department in the State of Oklahoma of a standard equivalent to that required for eligibility under this act or amendments thereto, five (5) years of which service shall have been consecutive immediately preceding the end of such period and with the city or town paying said pension, and he must conform also to such other and additional conditions as to age and

service as such city or town shall by its ordinances provide, and he must have complied with any agreement as to contributions by him and other policemen to any funds of such Pension and Retirement System where said agreement has been made as by this Act or amendments thereto provided; any policeman meeting with all other requirements of this Act, who has served twenty-five (25) years in accordance with this Act, *may be* retired at one-half (½) of the final average compensation of such policeman without regard to age. Providing further any policeman who serves over twenty-five (25) years *may be* retired at one-half (½) of the final average compensation of such policeman, plus two percent (2%) of each additional year in excess of twenty-five (25) years, not to exceed in any event three fourths (¾) of final average compensation of such policeman. * * *" (Emphasis ours.)

The portion of the aforementioned City Ordinance cited in relator's brief is as follows:

"Section 94. Service Pensions. The Board of Trustees is hereby *authorized and empowered* to pay out of any funds in its Police Pension and Retirement System a service pension to any policeman eligible as hereinafter provided of fifty per cent (50%) of the average final monthly compensation paid to the affected policeman to be determined by dividing the total salary paid said policeman from the last preceding year (exclusive of longevity or service pay) by twelve.

* * * * * *

"Any policeman meeting all other requirements of the ordinance controlling the Police Pension and Retirement System who has served twenty-five years in accordance with such ordinance *may be* retired at one-half (½) of said average final monthly compensation of such policeman without regard to age. Provided further, any policeman who serves over twenty-five years

*may be* retired at one-half (½) of the average final monthly compensation of such policeman, plus 2 per cent (2%) of such average final monthly compensation for each additional year's service, not to exceed in any event three-fourths (¾) of the average final monthly compensation of such policeman. * * *" (Emphasis ours.)

As will be noted by the statute, a city or town "is * *. * *authorized* and *empowered* to pay out of any funds in its Pension and Retirement System, a service pension to any policemen eligible * * * in such amount as said city or town shall by ordinance provide, *not exceeding* in any event the amount of the money in such funds and *not exceeding* in any event one-half (½) of the average final compensation of any such policemen, * * *". As will also be noted, the only service pension that the wording of the Tulsa City ordinance authorizes is the one plaintiff contends for, that is: "fifty per cent (50%) of the average final monthly compensation * * * to be determined by * * * (etc.)." As this is the only pension provided by said ordinance for an eligible policeman to receive, it follows that, if an applicant for such pension is qualified for any pension at all thereunder, it is the one, and only one, specified in the ordinance. Consequently, we conclude that, it being undisputed that plaintiff is qualified for the pension contemplated by the Tulsa ordinance, it was the mandatory duty of the defendant Board thereunder, to order that pension paid him. Nowhere in the ordinance, or that part thereof cited by the parties as applicable, is there any wording indicating an intention by the enacting body that such a policeman is to be paid any less than said *only amount specified*. It is therefore plain that the board had neither the authority, nor any discretion, to allow plaintiff a pension of less than that amount.

Both parties recognize, that in such a situation, mandamus will lie to enforce such a duty, if there is no adequate remedy at law. Respondents maintain, as the trial court held, however, that there is such a

remedy. They rely, for this contention, upon sec. 541v (Title 11, supra), which is the section of the cited section that provides for appeals to the district court from decisions of such Boards. The material part of said section is as follows:

"Any policeman, widow or dependent of any policeman who *has been denied* a pension or retirement pay by the Board of Trustees, where application for said Pension or Retirement pay was made, *and feels that he was not given fair and just consideration,* may appeal his case to the District Court in the county in which such Board of Trustees is located, * * *". (Emphasis ours.)

Respondents hinge their argument upon the phrase " * * * and feels that he was not given fair and just consideration * * *", and, on the basis of this wording, argue that the appeals contemplated in said section include those in cases wherein the board allows the policemen involved less than they believe themselves entitled to, as well as those cases in which no amount of pension is allowed. We cannot concur in this interpretation of said section. The phrase relied on by respondents is merely supplemental, and conjunctive to the phrase "* * * any policeman * * * who *has been denied* a pension * * *", which latter prescribes the first prerequisite of an appealable order under said section. This case is not one in which a pension "has been denied", therefore the section contains no provision for its appeal. As no other section of our statutes, purporting to provide for appeals in such cases, is cited, and we know of none, we must conclude there is none. As it is not claimed that the relator has an adequate remedy at law, *except* by the appeal to the district court specified in said statute, and we have concluded that the present case is not one of those in which (by the plain wording of the statute) such an appeal is made available, or applicable, it follows that this cause comes within the class of cases in which mandamus will lie. The trial court should therefore have granted the writ. Its judg-

ment refusing it is accordingly reversed; and this cause is remanded to said court with directions to vacate said judgment and enter one granting the writ.